**THIRD DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**January 13, 2023**

# In the Court of Appeals of Georgia

A22A1175. IN THE INTEREST OF M. B., A CHILD.

PER CURIAM.

M. B., a juvenile, was adjudicated delinquent based on her admission that she committed acts that would be considered felony theft by taking if she were an adult, and the juvenile court placed her on probation for one year. She now appeals from several subsequent review hearing orders requiring her to seek medical care for herself and her minor child and adding conditions to her probation. For the reasons that follow, we affirm.

The record shows that in September 2021, the State charged then 16-year-old M. B., via a delinquency petition in the juvenile court, with multiple counts of theft by taking and criminal trespass. M. B. admitted to one count of theft by taking, and the State dismissed the remaining counts. In late October 2021, the juvenile court

adjudicated M. B. delinquent and placed her on one year of probation. Among other conditions of probation, the juvenile court ordered M. B. to cooperate with the Department of Family and Children Services ("DFCS") Family Preservation Services, referred her to the Healthy Teens Program, and ordered her to participate in counseling. The juvenile court noted in its probation order that "[t]he child's successful treatment, rehabilitation[,] and supervision requires the active participation and cooperation by the child *and* her family with Juvenile Court Probation and with DFCS, which is also providing services for this child and family."[1] M. B. did not appeal the adjudication or disposition orders.

Due to concerns raised by M. B.'s probation officer about ongoing circumstances at M. B.'s home, the State requested a review hearing, which was held in November 2021. At the hearing, the probation officer testified that she had concerns about M. B.'s lack of supervision and lack of stable housing; the fact that M. B. was not enrolled in school and was living in a home with her brother, who allegedly had mental health issues and behavioral problems and had dropped M. B.'s

---

[1] (Emphasis supplied.)

infant son[2] on multiple occasions; and M. B.'s failure to receive care for a postpartum medical issue that required treatment.

The juvenile court entered an order stating that there were issues that put M. B. and her infant at great risk, finding that M. B.'s mother "has unstable housing, has . . . educationally neglected the child (who has not attended school in over a year), has not ensured that the child received necessary medical care, and has not provided a safe environment in which the child can live." The juvenile court determined that there was clear evidence of neglect presented at the review hearing and noted that it was incumbent upon DFCS to closely monitor the case and the welfare of M. B. and her infant. The juvenile court also appointed a guardian ad litem ("GAL") for M. B.

A second review hearing was held in early December 2021, at which the probation officer testified that M. B.'s infant was staying with someone who was previously deemed an inappropriate care giver and with whom M. B. was prohibited from living. M. B. objected to references to the infant on relevance grounds, but the juvenile court ruled that the evidence related to M. B.'s circumstances and well-being and was therefore relevant. The juvenile court noted that the testimony presented did

---

[2] M. B. had a son in May 2021.

not require a significant change to its prior orders, but instructed the GAL to investigate further.

The GAL later filed a motion for emergency review hearing, and a third hearing was held in late December 2021. The GAL testified, over M. B.'s objection, about the whereabouts of M. B.'s infant, and M. B.'s probation officer testified that M. B. had not attended her medical appointment but had rescheduled it. After the hearing, the juvenile court added as a condition of probation that "the child shall obtain all appropriate medical and dental care for herself and her newborn," finding that the health and welfare of M. B. and her infant are relevant to and affect M. B.'s ability to be successful on probation.

A fourth review hearing was held in January 2022, after which the juvenile court entered an order noting that M. B. still had not attended any of her medical appointments since the birth of her infant seven months earlier. The juvenile court ordered M. B. to attend her medical appointments and to "engage in life-skills classes or activities, including meal preparation, budgeting, and domestic upkeep, as well as engage in parenting classes." M. B. now appeals from the juvenile court's review hearing orders.

1. M. B. first contends that the juvenile court abused its discretion by allowing dependency allegations and findings of neglect on the part of M. B.'s mother to affect the outcome of the November 2021 review hearing following M. B.'s delinquency disposition. Specifically, she challenges the court's consideration of her probation officer's testimony regarding M. B.'s brother, his possible mental health and behavioral issues, and his having accidentally dropped M. B.'s infant; information about M. B. failing to receive necessary medical care for a postpartum issue; and testimony regarding unstable housing and educational neglect attributable to M. B.'s mother. She further challenges the court's consideration of evidence that she had been using an inappropriate babysitter to care for her infant. She contends that the juvenile court erred by making a finding in her delinquency case that her mother neglected her. She argues that the court allowed these facts to affect the outcome of her delinquency case and that all findings of neglect or mention of dependency allegations involving her mother should be stricken from the orders in M. B.'s delinquency case.

Juvenile courts have the authority to modify their orders based on changed circumstances if doing so would be in the best interest of the child, and we review a

5

juvenile court's modification of disposition for abuse of discretion.[3] Also, under OCGA § 15-11-600 (f), the juvenile "court may consider any evidence, including hearsay evidence, that the court finds to be relevant, reliable, and necessary to determine the needs of a child who committed a delinquent act and the most appropriate disposition."[4]

Two of the stated purposes of Article 6 (Delinquency) of the Juvenile Code are

[t]o provide for a child committing delinquent acts with supervision, care, and rehabilitation which ensure balanced attention to the protection

---

[3] *In the Interest of M. B.*, 362 Ga. App. 604, 609 (869 SE2d 562) (2022).

[4] Georgia's Juvenile Code was revised, effective January 1, 2014, and the new Code applies to all juvenile proceedings commenced on or after that date, which includes the present case. See Ga. L. 2013, pp. 294, 514, § 5-1. However, the new Juvenile Code adopted many provisions of the former Code, and cases construing prior versions of the Code are relevant to the extent that comparable provisions have been adopted in the new Code. The applicable statute in this case is OCGA § 15-11-600 (f). However, in light of the similarity of the statutory provisions under former Code 1933, § 24A-2201, pre-2000 Code Section 15-11-33 (d) and pre-2014 Code Section 15-11-65 (b), which were succeeded by provisions in OCGA § 15-11-600 (f), cases decided under those former Code sections are relevant and instructive. See former Code Ann. § 24A-2201 (d) (Ga. L. 1971, pp. 709, 733) and OCGA § 15-11-65 (b) (2000) (Ga. L. 2000, pp. 20, 81, § 1) ("In dispositional hearings [where the court finds from clear and convincing evidence that the child is in need of treatment or rehabilitation as a delinquent child], all information helpful in determining the questions presented . . . may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition [.]").

of the community, the imposition of accountability, and the development of competencies to enable such child to become a responsible and productive member of the community; [and]

[t]o promote a continuum of services for a child and his or her family from prevention of delinquent acts to aftercare, considering, whenever possible, prevention, diversion, and early intervention, including an emphasis on community based alternatives[.][5]

In this context, OCGA § 15-11-601 (a) authorizes juvenile courts to enter certain dispositional orders "best suited to such child's treatment, rehabilitation, and welfare." These orders can contain provisions for counseling, advice, and assistance from appropriate private or public agencies designed to deter conditions that would be harmful to the child.[6]

Here, in its order following the November 2021 review hearing, the juvenile court acknowledged that M. B.'s case was not a dependency case and that DFCS was not a party to the proceeding, but it found that M. B. was being neglected, that she had unmet medical, educational, emotional, safety, and housing needs, and that DFCS's involvement was reasonable and had prevented M. B.'s removal from her

---

[5] OCGA § 15-11-470 (3), (4).

[6] OCGA § 15-11-601 (a) (2).

home. The juvenile court further stated that "[i]t is essential that DFCS, Juvenile Court Probation, the [GAL], and the attorneys coordinate and ensure that the neglect of [M. B.] does not continue." Under these circumstances, M. B. has not shown that the juvenile court abused its discretion by allowing testimony about M. B.'s home environment and lack of medical care in order to best determine her needs or by articulating its concerns about M. B.'s home environment.[7] The circumstances presented at the hearing were relevant to determining the scope of a disposition that is "best suited to [M. B.'s] treatment, rehabilitation, and welfare," as authorized by OCGA § 15-11-601 (a), and the challenged order merely reflects those considerations. Accordingly, this argument presents no basis for reversal.

2. M. B. also argues that the juvenile court abused its discretion by imposing probation conditions relating to the care of her infant and her own medical care and life skills. She contends that all orders pertaining to her infant and all mention of the infant should be stricken.

---

[7] See OCGA § 15-11-600 (f) ("The court may consider any evidence, including hearsay evidence, that the court finds to be relevant, reliable, and necessary to determine the needs of a child who committed a delinquent act and the most appropriate disposition."); *J. B. v. State*, 139 Ga. App. 545, 547 (3) (228 SE2d 712) (1976) (under former Code § 24A-2201 (d), in the disposition phase of a delinquency case, "the court hears virtually all evidence which is material and relevant to the issue of disposition").

OCGA § 15-11-601 (a) (3) states in part that a juvenile court may make "[a]n order placing [a] child on probation under conditions and limitations the court prescribes and which may include the probation management program." The juvenile court directed, as a reasonable condition of probation, that M. B. and her child receive "appropriate medical and dental care." Given the broad discretion given juvenile court judges, the stated purposes of the delinquency article of the juvenile code,[8] and the absence of express authority to the contrary, we discern no abuse of discretion.[9]

OCGA § 15-11-601 (a) (2) authorizes the juvenile court to order that a delinquent child

> participate in counseling or in counsel and advice[,] . . . [which] may be provided by the court, court personnel, probation officers, community supervision officers, professional counselors or social workers, psychologists, physicians, physician assistants, qualified volunteers, or appropriate public, private, or volunteer agencies and shall be designed to assist in deterring future delinquent acts or other conduct or conditions which would be harmful to such child or society[.]

---

[8] See OCGA § 15-11-470 (3), (4).

[9] See *In the Interest of A. H. S.*, 223 Ga. App. 824, 825 (2) (479 SE2d 157) (1996) (discussing a juvenile court's authority, under former OCGA § 15-11-35 (a) (2), to place a child on probation "'under conditions and limitations the court prescribes'").

Here, the requirements that M. B. undergo life skills training and obtain medical care for herself and her child, as ordered by the juvenile court, are geared toward "the development of competencies to enable [her] to become a responsible and productive member of the community" as envisioned by OCGA § 15-11-470 (3). As such, their imposition was not an abuse of discretion by the juvenile court.

Finally, OCGA § 15-11-27 (a) states that during the pendency of any proceeding under Georgia's juvenile code, the court may order a child to be examined by a physician. M. B. had recently given birth and had not received any postpartum care, even though treatment was needed. Because the juvenile court is expressly authorized to order a medical exam, the order that M. B. obtain all appropriate medical care was not an abuse of discretion.

Nor was the court's order that M. B. obtain all appropriate medical and dental care for her newborn an abuse of discretion. The juvenile court found that the health and welfare of M. B. and her infant are relevant to and impact M. B.'s ability to be successful on probation. This is consistent with the stated purpose of Article 6 "[t]"o promote a continuum of services for a child and his or her family from prevention of delinquent acts to aftercare, considering, whenever possible, prevention, diversion,

and early intervention, including an emphasis on community based alternatives."[10] Requiring a juvenile on delinquent probation to seek "appropriate medical and dental care" for her infant also conforms with OCGA § 15-11-601 (a) (2), which authorizes the juvenile court to require the child "to participate in counseling or counsel and advice. . . provided by [a series of professionals including] physicians . . . designed to assist in deterring . . . conditions which would be harmful to such child or society." The General Assembly expressed a clear intent that "[a]bove all, [the Juvenile Code] shall be liberally construed to reflect that the paramount child welfare policy of this state is to determine and ensure the best interests of its children."[11] In light of this explicit intent and the language in OCGA § 15-11-601 authorizing a juvenile court to require a child to seek counsel and advice from a physician, we discern no abuse of discretion in the provision M. B. challenges here.

3. M. B. also argues that the juvenile court abused its discretion in the October 2022 disposition order by directing DFCS to monitor M. B.'s care for herself and her infant child because neither DFCS nor her infant were a party to the initial delinquency proceeding. The record reveals that M. B. did not appeal the original

---

[10] OCGA § 15-11-470 (4).

[11] OCGA § 15-11-1.

11

disposition order requiring the cooperation and active participation of M. B. and her family with DFCS. Orders of disposition are final judgments, directly appealable under OCGA § 5-6-34 (a) (1).[12] Generally, a notice of appeal from a final judgment must be filed "within 30 days after entry of the appealable decision or judgment complained of."[13] Here, M. B. timely appealed the orders from her subsequent review hearings, but did not file a notice of appeal until more than 30 days after the entry of the original probation order requiring M. B. and her family to cooperate with DFCS. "[T]he . . . timely filing of [the] notice of appeal is an absolute requirement to confer appellate jurisdiction."[14] Thus, we do not have jurisdiction to consider M. B.'s challenge to the initial delinquency adjudication.

In any event, we note that OCGA § 15-11-601 (a) (1) prohibits placement into non-temporary DFCS custody as a disposition for a delinquent act (unless the child is also adjudicated dependent). The provision that M. B. seeks to challenge was a direction to DFCS to "monitor" M. B.'s care; she was not placed into DFCS's

---

[12] See *In the Interest of N. M.*, 316 Ga. App. 649, 651 (1) (730 SE2d 127) (2012).

[13] OCGA § 5-6-38 (a).

[14] (Punctuation and emphasis omitted.) *Davis v. State*, 330 Ga. App. 711 (769 SE2d 133) (2015).

custody. This is consistent with the applicable statutory language and our holdings herein.

4. Finally, M. B. argues that the juvenile court abused its discretion by calling the GAL to testify as to the facts of the GAL's own motion. She cites OCGA § 24-6-614 (a), which states that

> [t]he court may, on its own motion, call a court appointed expert, call a witness regarding the competency of any party, or call a child witness or, at the suggestion of a party, call such witnesses, and all parties shall be entitled to cross-examine such witnesses. In all other situations, the court may only call witnesses when there is an agreement of all of the parties for the court to call such witnesses and all parties shall be entitled to cross-examine such witnesses.

A GAL is "an individual appointed to assist the court in determining the best interests of the child."[15] The role of a GAL in delinquency proceedings is the same as provided for in all dependency proceedings under Article 3 of the Juvenile Code.[16] A GAL must "[a]ttend all court hearings and other proceedings to advocate for [the] child's

---

[15] OCGA § 15-11-2 (35).

[16] OCGA § 15-11-476 (b).

13

best interests."[17] The court also may compel a child's GAL "to attend a hearing relating to such child and to testify."[18]

Here, while M. B. complains that the GAL was not qualified as an expert witness, a GAL is considered an expert witness and is expected to be called as the court's witness.[19] M. B.'s GAL testified and was subject to examination by the court, the State, and M. B. Under these circumstances, the juvenile court did not abuse its discretion by allowing the GAL to testify.

*Judgment affirmed. Division Per Curiam. All Judges concur.*

---

[17] OCGA § 15-11-105 (c) (8).

[18] OCGA § 15-11-104 (j).

[19] See Uniform Superior Court Rule 24.9 (7) ("It is expected that the GAL shall be called as the Court's witness at trial unless otherwise directed by the Court. The GAL shall be subject to examination by the parties and the court. The GAL is qualified as an expert witness on the best interest of the child(ren) in question.").